| DISTRICT COURT, DENVER COUNTY<br>STATE OF COLORADO<br>1437 Bannock Street<br>Denver, Colorado 80202 | DATE FILED: July 23, 2020 12:53 PM<br>FILING ID: 9B89016B9BFDD<br>CASE NUMBER: 2020CV32523 |
|---|---|
| Plaintiff: DANA PARKER, an individual,<br><br>v.<br><br>Defendant(s): TRUSTWAVE HOLDINGS, INC<br>D/B/A AUBIRON TRUSTWAVE, a Delaware<br>corporation. | ▲ COURT USE ONLY ▲ |
| Attorneys for Plaintiff:<br>Jason B. Wesoky, Reg. No. 34241<br>Darling Milligan PC<br>1331 17th Street, Suite 800<br>Denver, CO 80202<br>Phone:        (303) 623-9133<br>Fax:            (303) 623-9129<br>E-mail:        jwesoky@darlingmilligan.com | Case No:<br><br>Division: |
| COMPLAINT | |

Plaintiff, Dana Parker, by and through her attorneys Darling Milligan PC, for her complaint against Trustwave Holdings, Inc. d/b/a Aubiron Trustwave, a Delaware corporation ("Trustwave"), avers as follows:

## GENERAL ALLEGATIONS

1.      Plaintiff is an individual residing in the City and County of Denver, State of Colorado.

2.      Trustwave is a Delaware corporation and is authorized to do business in the State of Colorado as Aubrion Trustwave. At all times pertinent hereto it was an employer of more than 20 employees and conducted business in the State of Colorado.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to C.R.S. § 13-1-124 as Defendants conduct business within Colorado and the discrimination occurred in Colorado.

4.      Venue is proper in Denver County pursuant to C.R.C.P. 98 as Plaintiff resides in Denver County and the discrimination occurred in Denver County.

## FACTUAL BACKGROUND

5.      In 2017, Ms. Parker was 63 years old and worked at Trustwave in quality assurance for seven years in a department known as the Quality Assurance Department.

6.      When her boss began treating her differently, Ms. Parker first thought it was based on the length of time she had been at the company. But, when Ms. Parker saw that other senior individuals, who were over 40 years of age, were terminated, it became clear this was about age.

7.      In May 2017, Ms. Parker raised concerns that she was being discriminated against by Mr. Long, her supervisor. Ms. Parker felt Mr. Long bullied her and that he was trying to force her out. Ms. Parker wrote several letters and memos on this issue.

8.      In November 2018, Trustwave terminated Ms. Parker along with other individuals who were over 40. Ms. Parker was 13 months from full retirement age (66).

9.      Trustwave did not fire Amanda Webb, the most recent U.S.-based hire, who worked in Ms. Parker's department. Ms. Webb had less experience than Ms. Parker.

10.      Ms. Webb, a woman who reports to the Greenwood Village office in Colorado, is 29 years old and lives five minutes from the office. Ms. Webb was not only retained while Ms. Parker and others over the age of 40 were fired, Ms. Webb was promoted to Stage 2.

11.      Trustwave divides its quality assurance processes into stages, Stage 1 and Stage 2. During Stage 2, there is more technical work that requires particular training and expertise, which Ms. Webb did not have. Even though Ms. Webb has less technical knowledge than Ms. Parker, Ms. Webb was retained and promoted because she is younger, and Ms. Parker was fired because she is older.

12.      When Trustwave terminated Ms. Parker and her colleagues, Mr. Long told her that they eliminated the entire department because it was no longer needed.

13.       This is false. In December 2018, Trustwave reorganized some of its divisions and departments into a new division – SecureTrust.

14.      Employees in the Quality Assurance Department where Ms. Parker had worked were now part of SecureTrust.

15.     Mr. Long admitted Ms. Parker's department was not eliminated because he posted on his Linkedin page: "Same job, new Division!"

**Work Performance; "Acerbic" Behavior; and Working Arrangement**

16.     From 2011 to 2016 Ms. Parker received very positive performance reviews. Additionally, Ms. Parker was a very appreciated employee and her colleagues had excellent things to say about the quality of her work. There were no complaints about the fact that Ms. Parker worked remotely.

17.     In 2016 Ms. Parker unexpectedly received negative performance reviews with little to no explanation. Ms. Parker disputed these negative performance reviews and showed them to be baseless. Despite Ms. Parker's documented contradictions, the reviews stood. These bad reviews are a pretext for Ms. Parker's termination.

18.     As stated above, Ms. Parker worked remotely. Therefore, the majority, if not all her interactions with her immediate supervisor and manager were through email or Skype messaging. It is often impossible to determine if an individual's behavior is "acerbic" via text or emails. Yet, one of the main reasons Trustwave asserts for firing Ms. Parker is her attitude. A cursory look at Trustwave's "evidence" demonstrates this is simply a pretextual reason for firing Ms. Parker.

19.     In emails exchanged between Ms. Parker and Mr. Long, Ms. Parker states "feedback is encouraged, this is not an employee resistant to criticism." Also, Ms. Parker asked for guidance on how Mr. Long would like her to perform a specific task, to which Mr. Long states, "Actually I'm quite annoyed with your response…I don't think it warranted a sarcastic response like this." Ms. Parker responds, "I'm sorry you read sarcasm into what I wrote, I didn't put it in there."

20.     On May 18, 2017, Mr. Long emailed Ms. Parker expectations going forward. Mr. Long focused on three areas: 1) stay current with Stage 1 review processes; 2) make good use of your time; and 3) work from the office.

21.     Ms. Parker not only stayed current with Stage 1 review processes, Ms. Parker wrote the original Stage 1 review process and was responsible for updating it before it was moved to Office 365.

22.     Further, Ms. Parker had never missed a Stage 1 meeting during which Stage 1 processes were discussed and she read the meeting minutes for every meeting to make sure she understood what was discussed. To ensure she stayed current, Ms. Parker asked for feedback with every report she submitted and asked questions related to Stage 2 reports.

23.     Mr. Long did not provide any examples about Ms. Parker not staying current or not making good use of her time. Additionally, Ms. Parker was forbidden by Mr. Long from asking questions to her supervisor, co-workers, or Mr. Long, about any aspect of her work.

24.     Trustwave complained Ms. Parker did not promptly respond to an email. But, that email was sent to both her and the younger Ms. Webb and Ms. Parker responded before Ms. Webb did. Yet, only Ms. Parker, who is over 40, was criticized for allegedly not "promptly" responding.

25.     Ms. Parker has always cooperated gladly when asked to take on special projects. Ms. Parker completed independent research on terms and processes and equipment used. Ms. Parker assisted Denise Holloway, Director of Compliance Assurance, to obtain reviews for completed assessments.

26.     When Mr. Long insisted Ms. Parker cease working remotely even though the majority of her department worked remotely, he claimed it would "further support the sharing of work, assisting co-workers, and generally providing for a more productive use of time." But the work Ms. Parker performed was solitary that requires focus and concentration.

27.     Moreover, Trustwave equipped employees with various technologies Ms. Parker used all the time to communicate with co-workers and her superiors, including IM, Skype, and email. Also, wasting an hour or more commuting each way was a less productive use of Ms. Parker's time.

28.     Mr. Long stated requiring Ms. Parker to spend two hours a day commuting was a reasonable request. But requiring Ms. Parker to report to the office changed the job she was in and did not include additional compensation to cover the large added expenses it would force Ms. Parker to incur.

29.     Trustwave's assertions that Ms. Parker was simply not good at her job is false and pretext for its real reasons for firing her: discrimination and retaliation.

30.     Ms. Parker timely brought a charge of discrimination with the Colorado Civil Rights Division ("CCRD") on the grounds of age discrimination and for engaging in protected activity, including subjecting her to unequal treatment relative to employees less than 40 years old. The CCRD investigated the matter.

31.     On April 30, 2020, the CCRD issued a Notice of Right to Sue.

**<u>First Claim for Relief</u>**
**(Discrimination under C.R.S. § 24-34-402(1)(a) *et seq.*)**

32.     Plaintiff incorporates all prior allegations as if fully set forth herein.

33.     The foregoing acts and omissions of Defendant's discrimination violate C.R.S. § 24-34-402(1)(a) *et seq.*

34.     Plaintiff is in a protected class based on her age since she is over 40.

35.     Ms. Parker was qualified for her job as Trustwave's Compliance Analyst.

36.     Defendant terminated Plaintiff under circumstances which give rise to the inference of unlawful discrimination because Defendant treated younger employees preferentially as compared to Plaintiff and did not terminate any similarly situated younger employees.

37.     When Plaintiff complained to Trustwave about her disparate treatment and the treatment she was receiving, Trustwave retaliated against her by terminating her

38.     Thus, Trustwave engaged in discrimination because of Ms. Parker's age.

39.     The discrimination includes the treatment of Ms. Parker that differed from her younger counterparts, including, but not limited to, revoking her telecommuting status, require her to commute two hours a day to the office, negative reviews without explanation, mistreatment, and discharge.

40.     Plaintiff is entitled to all damages and remedies, including, but not limited to back pay, front pay, reinstatement, punitive damages as permitted by statute, attorney fees and costs.

**<u>Second Claim for Relief</u>**
**(Violation of the Age Discrimination in Employment Act of 1967, as amended and Retaliation)**

41.     Plaintiff incorporates all prior allegations as if fully set forth herein.

42.     The foregoing acts and omissions of Defendant's violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended and retaliation.

43.     Plaintiff is in a protected class based on her age since she's over 40.

44.     Ms. Parker was qualified for her job as Trustwave's Compliance Analyst.

45. Defendant terminated Plaintiff under circumstances which give rise to the inference of unlawful discrimination because Defendant treated younger employees preferentially as compared to Plaintiff and did not terminate any similarly situated younger employees.

46. Thus, Trustwave engaged in discrimination because of Ms. Parker's age.

47. The discrimination includes the treatment of Ms. Parker that differed from her younger counterparts, including, but not limited to, revoking her telecommuting status, require her to commute two hours a day to the office, negative reviews without explanation, mistreatment, and discharge.

48. When Plaintiff complained to Trustwave about her disparate treatment and the treatment she was receiving, Trustwave retaliated against her by terminating her.

49. Plaintiff is entitled to all damages and remedies, including, but not limited to back pay, front pay, reinstatement, punitive damages as permitted by statute, attorney fees and costs.

WHEREFORE, Plaintiff seeks judgment in her favor and against Defendant for monetary damages in an amount to be determined by a jury and the Court for all damages compensable under the foregoing claims, for all equitable remedies available under said claims, including: back pay (including interest and benefits); compensation for damages sustained as a result of Defendant's conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof; exemplary and punitive damages in accordance with applicable law in an amount commensurate with Defendant's ability to pay and to deter future conduct; costs incurred, including reasonable attorneys' fees to the extent allowable by law; pre-judgment and post-judgment interest, as provided by law; and such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Respectfully submitted this 23rd day of July 2020.

DARLING MILLIGAN PC

*/s/ Jason B. Wesoky*
Jason B. Wesoky, Reg. No. 34241
*Attorneys for Plaintiff*

Plaintiff's Address:
704 W. 1st Avenue
Denver, CO 80223-1532